UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL A. COHEN, | ) | No. EDCV 14-1544 FFM |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Plaintiff Michael A. Cohen ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 8). Pursuant to the July 30, 2014 Case Management Order, (Dkt. No. 5), on June 8, 2015, the parties filed a Joint Stipulation ("Joint Stip.") detailing each party's arguments and authorities, (Dkt. No. 20). The Court has reviewed the Joint Stipulation and the administrative record ("A.R."), filed by defendant on February 25, 2015, (Dkt.

1

No. 16). For the reasons stated below, the decision of the Commissioner is affirmed.

## II. PRIOR PROCEEDINGS

On August 3, 2011, Plaintiff applied for Supplemental Security Income based on alleged physical and mental impairments and asserting disability since October 31, 2007. (A.R. 157–84). Plaintiff alleged the following disabling impairments: anxiety, kidney transplant, heart valve replacement, gout, severe obesity, and high blood pressure. (A.R. 176). The Administrative Law Judge ("ALJ"), Charles E. Stevenson, examined the records and heard testimony from Plaintiff, a medical expert ("ME"), and a vocational expert ("VE"), on January 8, 2013. (A.R. at 43–68).

At the hearing, the ME, Dr. John A. Morse, summarized Plaintiff's impairments as: post-renal transplant, post-aortic valve replacement, obesity, and diffuse muscle and joint pains. (A.R. 46–47). According to Dr. Morse, none of Plaintiff's impairments met or equaled a listing found in 20 C.F.R § 404, Subpart P, Appendix 1. (A.R. 47). Upon examination by Plaintiff's attorney, Dr. Morse testified that despite the indication that Plaintiff has renal disease, his "renal function is essentially normal" and is "working beautifully." (A.R. 49). Furthermore, Dr. Morse stated that Plaintiff's anti-rejection medication "would have some side effects, maybe some fatigue." (*Id.*) Dr. Morse also testified that Plaintiff "did have some problems with his medication," but that "he's stabilized on his current dose of medications as of October of '11." (A.R. 51).

Plaintiff testified at the hearing that the following symptoms affect his abilities to function normally: nausea, vomiting, diarrhea, constipation, blurry vision, and mood swings, as well as general pain and fatigue in his muscles and joints. (A.R. 56). According to Plaintiff, he began feeling fatigued about a month after his kidney transplant. (*Id.*) Additionally, Plaintiff testified that his legs and feet hurt more after the transplant than they did before it. (A.R. 59). He has also gained seventy pounds since the surgery. (A.R. 56). Plaintiff testified that, based on his impairments, he is only able

to stand or walk for twenty minutes before needing to rest for thirty minutes. (A.R. 60). Plaintiff also claimed that he could lift twenty pounds occasionally, but knows that he could not keep lifting twenty pounds for two hours total in a normal day. (A.R. 62). Plaintiff also claimed that he uses the bathroom thirty-five times per day. (A.R. 61).

The ALJ asked the VE, Jeanine Metildi, what work Plaintiff could perform if he were limited to: light work lifting ten to twenty pounds; sitting, standing, and walking six hours in a normal eight-hour workday; and avoiding ladders, unprotected heights, and hazardous equipment. (A.R. 65). Based on this hypothetical, the VE testified that Plaintiff would be able to work as a bench assembler or an office helper. (A.R. 65–66). On examination by Plaintiff's attorney, the VE testified that the inability to stand or walk for more than two hours in an eight-hour workday and frequent absenteeism would preclude any work. (A.R. 66).

On February 15, 2013, the ALJ granted Plaintiff benefits in a written decision. (A.R. 21–32). The ALJ determined that Plaintiff was disabled from October 31, 2007, through May 19, 2009, because Plaintiff's renal disease met listing criteria found in 20 C.F.R. § 404, Subpart P, Appendix 1. (A.R. 26). However, the ALJ found that beginning May 20, 2009, Plaintiff possessed the residual functional capacity ("RFC") to "lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours in an eight-hour work day; and no ladders, unprotected heights, or hazardous equipment." (A.R. 26–27). In making this finding, the ALJ found that Plaintiff's testimony and the statements of Plaintiff's wife were less than fully credible. (A.R. 29). Additionally, the ALJ rejected the September 26, 2010[2], medical opinions of Plaintiff's treating physician, Dr. Mohamed Simjee. (*Id.*) Based on the testimony of the VE, the ALJ found that Plaintiff could perform work as a bench assembler or office helper, and was therefore not disabled under the Social Security Act. (A.R. 31).

On May 28, 2014, the Appeals Council denied review of the ALJ's decision. (A.R. 1–3). Plaintiff initiated the instant proceedings on July 25, 2014. (Dkt. No. 1).

///

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flatten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014–15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff raises the following issues:

1. Whether the ALJ properly considered the relevant medical evidence of record as it pertain to 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 6.02 ("Listing 6.02");
2. Whether the ALJ properly considered the opinions of Plaintiff's treating physician, Dr. Mohamed Simjee; and

4

3.  Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility.

(Joint Stip. at 4).

## V.  DISCUSSION

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.

A.  <u>The ALJ Properly Considered the Relevant Medical Evidence</u>

Plaintiff argues that the ALJ failed to consider relevant medical evidence of impairment and, therefore, improperly found that Plaintiff's condition had improved following May 20, 2009. (Joint Stip. at 5–7). Specifically, Plaintiff asserts that the ALJ failed to evaluate Plaintiff's ongoing renal impairment using the factors discussed in 20 C.F.R. § 404, Subpart P, Appendix 1, 6.00(E) ("Listing 6.00(E)"). (Joint Stip. at 5–7).

Under the law as it existed at the time of the ALJ's decision, a disability claimant who had undergone a kidney transplant was considered disabled for twelve months following the surgery. Listing 6.02(B). After twelve months, the ALJ must evaluate any ongoing impairment based on the following factors: "(a) occurrence of rejection episodes; (b) side effects of immunosuppressants, including corticosteroids; (c) frequency of any renal infections; (d) presence of systemic complications such as other infections, neuropathy, or deterioration of other organ systems." Listing 6.00(E).

Here, the ALJ found that Plaintiff was disabled for the twelve-months following Plaintiff's kidney transplant, per Listing 6.02. (A.R. 26). In determining that Plaintiff's disability ended on May 20, 2009, the ALJ found that Plaintiff's renal function had been "essentially normal since the transplant." (A.R. 28). The ALJ further noted in the decision that "[t]he transplant, as well as [Plaintiff's] kidney disease, has been characterized as stable." (*Id.*) Additionally, as discussed below, the ALJ discredited

Plaintiff's testimony regarding the side effects of his medication. (A.R. 29). While the ALJ did not explicitly discuss the factors listed above, the Court may infer that the ALJ's discussion of Plaintiff's renal functioning after May 20, 2009, satisfies 6.00(E).[1] Accordingly, the ALJ properly considered the relevant medical evidence in determining that Plaintiff's renal disease did not meet Listing 6.02.

Plaintiff further argues that the ALJ erred because he did not find several of Plaintiff's impairments severe. To the extent that this was error, that error was harmless. The ALJ's written decision indicates that he considered all of Plaintiff's impairments, both severe and non-severe, in making the disability determination. (A.R. 26). Accordingly, the Court is satisfied that any error does not call into question the ALJ's ultimate determination. *See Molina*, 674 F.3d at 1115; *see also Gray v. Comm'r of Soc. Sec. Admin.*, 365 F. App'x 60, 61–62 (9th Cir. 2010) (harmless error where ALJ considered both severe and non-severe impairments in determining claimant's RFC).

B.  The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician, Dr. Mohamed Simjee

  1.  Dr. Simjee's Opinion

On September 26, 2012, Dr. Mohamed Simjee, Plaintiff's treating physician, completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's limitations. (A.R. 3530–36). According to Dr. Simjee, Plaintiff suffers from diabetes, diabetic peripheral neuropathy, and chronic kidney disease. (A.R. 3531). Dr. Simjee further opined that the corresponding symptoms are fatigue, pain, and numbness. (*Id.*) Additionally, Dr. Simjee stated that Plaintiff suffered from depression and anxiety, and that his pain or other symptoms constantly interfere with his ability to concentrate.

---

[1] In any event, the ALJ's failure to explicitly discuss the factors is harmless, as it appears from the record that, had he explicitly discussed the above factors, the outcome would have remained the same. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks omitted) ("[E]rror is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion.")

(A.R. 3532). Regarding Plaintiff's physical abilities, Dr. Simjee found that Plaintiff can sit for ten minutes, stand for twenty minutes, walk two city blocks without rest or severe pain, and lift twenty pounds occasionally. (*Id.*) He also stated that Plaintiff is capable of low stress jobs, but would miss four days each month for treatment. (A.R. 3532, 3534).

    2.    Analysis

Ordinarily, a treating physician's opinion is entitled to great weight. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527. "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Thus, an ALJ may reject the opinion of a treating physician by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Accordingly, an ALJ may assign little or no weight to the opinion of a treating physician that is "unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (citations omitted).

Here, the ALJ assigned little weight to Dr. Simjee's opinions after finding that Dr. Simjee's "significant standing and walking restrictions were in conflict with the medical record." (A.R. 29). Specifically, the ALJ pointed out that Plaintiff could walk on a treadmill for two miles, ride a bicycle without any issues, and referee youth soccer matches. (*Id.*) The ALJ also noted that Plaintiff's admitted daily activities are inconsistent with Dr. Simjee's physical limitations. (*Id.*) The record supports the ALJ's findings. Plaintiff did take part in a weekly exercise regimen that involved walking two miles and biking four miles. (A.R. 1007, 1147, 1216). Additionally, Plaintiff admitted that he referees at least one youth soccer game each week. (A.R. 214). Plaintiff's statement that he shops twice a week for one to two hours at a time, (A.R. 213), also weighs against Dr. Simjee's findings. Furthermore, as Dr. Morse noted, there is little

1   discussion of any diabetic neuropathy in the medical record.[2]   As a result, the ALJ was

2   permitted to assign reject the opinion of Dr. Simjee because it was unsupported by the

3   objective medical evidence in the record.  *See Magallanes*, 881 F.2d at 753–54.

4   C.      The ALJ Properly Considered Plaintiff's Subjective Complaints and Assessed His

5           Credibility

6           Once a claimant produces medical evidence of an underlying impairment that is

7   reasonably likely to cause the alleged symptoms, medical findings are not required to

8   support their claimed severity.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

9   However, an ALJ may reject a claimant's allegations upon:  (1) finding affirmative

10  evidence of malingering; or (2) providing clear and convincing reasons for so doing.

11  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  "General findings are

12  insufficient; rather, the ALJ must identify what testimony is not credible and what

13  evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 821 (citing *Dodrill v.*

14  *Shalala*, 12 F.3d 915, 918 (9th Cir. 1983)).

15          1.      ALJ's Decision

16          The ALJ found that Plaintiff's statements "concerning the intensity, persistence,

17  and limiting effects of [his] symptoms are not entirely credible." (A.R. 29).  In making

18  this determination, the ALJ found that Plaintiff's "allegations of generally disabling

19  symptoms and limitations are not corroborated by the record." (*Id*.)  That ALJ further

20

21          [2] The ALJ did not err in finding that Dr. Morse's opinion constituted substantial
22  evidence that could rebut the opinions of Dr. Simjee.  The opinion of a non-treating, non-
    examining physician may constitute substantial evidence if it is supported by evidence
23  from the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, Dr.
24  Morse's opinions were based upon a review of the lengthy medical records, including the
    reports of examining physicians.  Moreover, Dr. Morse's opinions were supported by
25  these records.  Therefore, the ALJ was permitted to rely on Dr. Morse's opinion in lieu of
26  the unsupported opinion of Dr. Simjee.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.
    1996) (ALJ did not err in disregarding the opinions of claimant's treating physician
27  where the opposing opinions of the non-examining physician were corroborated by the
28  medical record)

8

found that Plaintiff's activities "are inconsistent with the allegations of disability because they indicate that the claimant is capable of performing appropriate work activities on an ongoing daily basis." (*Id.*) Additionally, the ALJ discussed the facts that Plaintiff's "complaints of nausea, vomiting, diarrhea, and constipation severe enough to result in thirty-five daily trips to the bathroom are not supported by the treatment history." (*Id.*) Finally, the ALJ found evidence of "non-compliance with medication as well as with exercise and diet recommendations." (*Id.*)

    2.    Analysis

        i.    *Daily Activities*

An ALJ may permissibly discredit a claimant's testimony "if the level of activity [is] inconsistent with [the claimant's] claimed limitations." *Reddick*, 157 F.3d at 722. Here, the ALJ found that Plaintiff's daily activities were "inconsistent with the allegations of disability." (A.R. 29). To support this finding, the ALJ pointed to Plaintiff's ability to walk two miles on a treadmill and ride a bicycle without problems, (A.R. 1007, 1147, 1219), and referee youth soccer, (A.R. 214). Walking two miles on a treadmill likely took Plaintiff longer than twenty minutes. (A.R. 1219). Additionally, soccer referees are required to remain standing for the duration of the match, and must move around across the soccer field to follow the players. As a result, each of these activities is inconsistent with Plaintiff's claim that he cannot stand or walk for more than twenty minutes at a time. Because the "level of [Plaintiff's activities] is inconsistent with [his] claimed limitations," the ALJ did not err in relying on Plaintiff's daily activities to support the adverse credibility determination. *See Reddick*, 157 F.3d at 722.

ALJs must be "cautious in concluding that daily activities are inconsistent with testimony about pain." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, the Court is satisfied with the ALJ's findings in this instance. Here, the ALJ discredited Plaintiff's testimony because his claimed daily activities conflicted with his asserted limitations. Indeed, the ALJ's analysis could be alternatively characterized as permissibly discrediting Plaintiff on the basis that he made inconsistent statements

9

concerning his limitations.  *See Smolen*, 80 F.3d at 1284 (ALJs may rely on  "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements").  As a result, the Court concludes that the ALJ permissibly found that evidence of Plaintiff's daily activities discredited his testimony.  Additionally, even if the ALJ erred in finding that Plaintiff's daily activities "indicate that the claimant is capable of performing appropriate work activities on an ongoing daily basis," (A.R. 29), such an error was harmless.  *See Batson*, 359 F.3d at 1197 (finding harmless error where ALJ's credibility determination was supported by other permissible reasons and objective medical evidence); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("[R]eversal on account of error is not automatic, but requires a determination of prejudice.").

                ii.      *Objective Medical Evidence*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).  Here, the ALJ permissibly reasoned that the absence of "complaints of nausea, vomiting, diarrhea, and constipation severe enough to result in thirty-five daily trips to the bathroom," from the medical record weighed against Plaintiff's credibility.  (A.R. 29).  It does not require a doctor to determine that thirty-five daily trips the bathroom is a noteworthy medical condition.  Likewise, it is entirely reasonable to find that the absence of such a symptom or condition from the medical records indicates that it is not as serious as Plaintiff's testimony suggests.  Therefore, this reason constitutes a clear and convincing reason to support the ALJ's adverse credibility determination.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding that a claimant's failure to mention symptoms to doctors was a permissible reason for finding testimony less than fully credible).

/ / /

/ / /

            *iii.*    Failure to Follow Prescribed Course of Treatment

A claimant's unexplained failure to follow a prescribed course of treatment may support an adverse credibility determination. *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989). Here, the ALJ found "some evidence of [Plaintiff's] non-compliance with medication as well as with exercise and diet recommendations." (A.R. 29). The record supports this determination. On at least one occasion, Plaintiff lowered his medication dosage without any order or recommendation from his physician. (A.R. 1103). Additionally, beginning in 2011, Plaintiff ceased all exercise activities, despite his increasing weight and recommendations from doctors that he exercise three times per week. (A.R. 3825).

## VI.    CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds. The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 F. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten*, 44 F.3d at 1464. Furthermore, the Court finds that the ALJ's other findings are based on sufficient evidence and, therefore, "[the Court] may not substitute its judgment for that of the ALJ." *Batson*, 359 F.3d at 1196.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**ORDER**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 16, 2016

                                       /S/FREDERICK F. MUMM
                                          FREDERICK F. MUMM
                                  UNITED STATES MAGISTRATE JUDGE